The opinion of the court was delivered by
Nicholls, O. J.
The first question before us is the action of the court in overruling defendant’s objection to the want of proper parties. If the allegations of plaintiffs be true, that the property in question belonged to the community, which was free from debt, and that after the death of the wife the father sold the entire property as his own by private acts, absolutely ignoring any interest therein of his children, each one of these children had the right separately and apart from the others to bring an action for the recovery of the undivided portion of the property belonging to him which had been attempted illegally to be conveyed. These parties might have all joined in one action, but they were under no legal obligation so to do. The act of the father was absolutely null and needed no setting aside. The judicial proceedings in reference to granting a special mortgage on the father’s property had no bearing upon the question of the ownership of this particular property, as [we will hereafter show. The exception was correctly overruled.
The position next contended for in this court by the defendant is that Ophelia Oorbelle (Mrs. John Guillory) having consented to the homologation of the account of tutorship rendered by her father, and received from him the amount going to her as shown thereby giving him the receipt she did, is estopped, as is her vendee, from bringing the present action. The property in question was not placed in the inventory nor in any manner dealt with in the account. The father acted with respect to it as his separate property dehors the succession and the community. If Mrs. Guillory had an absolute vested right of ownership in the property at her mother’s death, that interest was not divested by the fact that in the enumeration of the assets of the community this particular asset was accidentally and erroneously or intentionally left out. The account and its homologation extended only to the property and moneys therein covered. The receipt itself shows on its face that it had reference to those and nothing more. The acknowledgment of Mrs. Guillory that all her rights under the special mortgage had been satisfied and extinguished, and her consent that the inscription of the mortgage *1471 in the records so far as she was concerned should be erased, could have been executed and the mortgage erased and extinguished without in the slightest degree, as matters stand, affecting his rights in the property. The evident theory of the defence is that because a mortgage has been given by a tutor to secure the fidelity of his trust to those in whose favor it is given, the minors are necessarily driven to an action upon the mortgage to secure their rights in respect to property of theirs with which he has illegally dealt while tutor. That although property belonging to the minors which has been illegally and unwarrantably sold by him for his own benefit still exists in kind, the parties holding the property so illegally disposed' of can successfully resist the bringing of a petitory action by the owners for the recovery thereof. This contention is totally inadmissible. The law prohibits the sale of the immovable property belonging to minors unless for special reasons and under special conditions and formalities. Civil Code, Art. 389. It contemplates that generally the tutor should preserve that property in kind, and turn it over to the minor when he shall have arrived at his majority.
Neither tutors nor administrators are permitted as a right to charge themselves with the value of property belonging to minors or to successions, and by so doing shift the ownership of the same from the minors and the succession to themselves. To permit them to do so would be to recognize as a legal proposition that a party has the right to violate his legal obligations and legal duty to others, and leave them no redress save practically an action in damages.
In New Orleans vs. the Wardens of the Church of St. Louis, 11 An. 245, this court said, speaking of a somewhat similar pretension: “ This is a doctrine as unsound as it is novel. The violation of a contract may be, and very often is, the ground of an action sounding in damages against the party who has violated the contract, but the claim in such a case is for the reparation of a wrong, and is the very opposite of a recognition of a right to violate the contract.” The recourse which minors have upon the property of their tutors, through the legal mortgage which the law has created in their favor, is a remedy in their favor to be enforced by them for the protection of their rights, and not an instrumentality by which those rights could be overridden and broken down by the tutor.
So far from minors being forced (by reason of the illegal sale of their property by their tutor) to a personal action against him and *1472 to an action of mortgage on his property, when the property alienated still exists in kind, it would often, on the contrary, be properly their duty, in the interest of third parties as well as their own, to proceed to the recovery of the property disposed of. In the case at bar the tutor did not go even so far as to charge himself with the value of the land. He sold it without authority, and seems to have repudiated the idea of all liability in the premises. The special mortgage given by the father, under the circumstances of this case, has no bearing upon the issues involved therein. The right of ownership of the plaintiff in the land in litigation is separate and distinct from any indebtedness or liability by the tutor to his minor children. The exception based on a contrary idea was correctly overruled.