OLIVER ET AL., PLAINTIFFS AND APPELLANTS, v. OLIVER, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Ponce in an Action of Ejectment.

No. 1068.—Decided' July 30, 1915.

APPEAL.—Under ordinary circumstances the better practice is to give the district court full opportunity to pass upon all the questions involved.

NULLITY—PRESCRIPTION—CONTRACT.—The four years' limitation fixed for actions for nullity applies only to contracts containing the requisites mentioned in section 1228 of the Civil Code.

JUDICIAL SALE—CONTRACT—CONSENT—JURISDICTION.—Considering a judicial sale as a contract in which the court or its duly authorized officer is substituted for the real vendor whose consent is by a paradoxical legal fiction given by the court, the court must have jurisdiction over the subject-matter, at least, and usually over the person of the defendant.

ID.—SUMMONS—JURISDICTION—CONSENT.—When the law requires personal service of a summons upon a defendant as an indispensable prerequisite to the exercise of jurisdiction, in the absence of such previous service the court is as wholly without authority to give its consent to a judicial sale as any unauthorized private individual would be.

ID.—PRESCRIPTION—CONSENT.—A plea of prescription is no defense to an action for the recovery of real property sold at a judicial sale when the court lacks authority to consent to the sale.

The facts are stated in the opinion.

Messrs. José Tous Soto and Herminio Díaz Navarro for the appellants.

Messrs. Tord, Castro and Canales for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

On October 23, 1913, the Ponce District Court, in a suit designated in the complaint as a reivindicatory action, rendered the following judgment:

"The court, after hearing the oral and written arguments of the parties and in accordance with its decision rendered in this case, holds that it should sustain and does sustain the demurrer on the ground that the complaint does not state facts sufficient to constitute a cause of action inasmuch as the action of nullity of contracts has prescribed, it being indispensable to pray previously for the said nullity in order that the action brought herein may be successful,

and the same being barred by the lapse of the time fixed by the law in which to bring the same, the complaint is hereby dismissed with costs.''

The sole ground upon which the judgment rests is clearly stated in the following memorandum filed by the trial judge:

''This action of ejectment is brought by the plaintiffs based: on the inefficacy of the proceedings and of the auction 'sale in an administrative foreclosure proceeding brought by Francisco Oliver Ballester against Antonio Oliver Fontanet, the plaintiff's predecessor in interest. The facts are clearly set forth in the amended complaint filed and we do not deem it necessary to repeat them here. The defendant filed a general demurrer to the amended complaint on the ground of lack of cause of action and also a demurrer to the cause of action on the ground that it appears from the face of the complaint that the action for nullity of contract has prescribed. Plaintiffs allege that in their complaint they do not bring the action for nullity as it is not necessary and that they limit themselves to the action of ejectment. In a decision of October 17, 1913, sustaining the demurrer to the original complaint, this court held that it was indispensable in this case to set up a prayer previously for the nullity of the defendant's title, as was done by the complainants in their original complaint and as necessarily had to be done in order that the action of ejectment might prosper. See the decision of this court of October, 1913, in this case which is made a part of this decision in order that it may not be necessary to repeat the authorities cited therein. We think that in their amended complaint the plaintiffs are really bringing the action for nullity, for although it is prayed that the judicial sale to José González and the sale by him to Francisco Oliver Ballester be declared 'ineffective' but not 'void,' the fact is that in order that the said contracts may be .declared 'ineffective' by the court it is necessary that it be considered that they have no legal force by reason of some defect, that is, that they be considered null and void. On the other hand, it clearly appears from the facts alleged in the complaint that the action of ejectment arises and is a consequence of the nullity of the contracts referred to· and it is immaterial that it is not prayed that the court declare the said contracts to be void. The court is of the opinion that the action set up in the complaint has prescribed for the aforesaid reasons and holds that it should sustain and does sustain the demurrer on the ground that the complaint does not state facts suf-

ficient to constitute a cause of action and the complaint not being susceptible of a new amendment on this point, it is ordered that the secretary enter a judgment dismissing the complaint with costs upon the plaintiffs."

The amended complaint, omitting the first and final paragraphs thereof and the description of the properties, follows:

"*Second.* That on July 11, 1900, defendant Francisco Oliver Ballester brought proceedings under the mortgage law in the District Court of Ponce against Antonio Oliver Fontanet, deceased, to recover the principal of a mortgage credit of 9,000 provincial *pesos* created by said Oliver Fontanet in favor of Matías Ferrer on the coffee plantations of said Oliver Fontanet which are described, the said credit having been assigned by Ferrer to the defendant * * *. *Third.* That the said mortgage credit did not bear interest and the collection of interest thereon was not the object of the said administrative foreclosure proceedings. *Fourth.* That on July 16, 1900, it was ordered that summons demanding payment issue against the defendant, and the plaintiff having filed a certificate showing that said defendant died on September 1, 1899, it was ordered by the court on motion of the plaintiff that the said summons issue against Antonio Alcover y Oliver who was alleged by the plaintiff to be in charge of the mortgaged property without stating in what legal capacity. *Fifth.* That the summons demanding payment was served on Antonio Alcover who was not in charge of the property as attorney in fact, as administrator, as lessee or in any legal capacity, but he was not served with a copy of the order for the summons or of the complaint or initial petition and no attempt was made before or after to demand payment of the lawful heirs of the deceased Antonio Oliver Fontanet or to substitute them as defendants in place of their author or to notify them of the summary proceeding to recover the said mortgage credit. *Sixth.* That the time allowed for payment having expired, the sale of the properties at public auction was announced in the *Official Gazette* of the 6th, 7th and 8th of November, 1900, but not in any other number of the said official periodical, the time between the first publication of the notice and the sale being eighteen days. *Seventh.* That the sale was made on November 24, 1900, the only bidder being José González to whom the property was sold for the sum of 13,219.20 provincial *pesos* and the proper deed was executed to him therefor. *Eighth.* That according to the mortgage deed the value of the mortgaged properties, renouncing

any new valuation or action tending thereto, was 24,700 *pesos*; that at the instance of the plaintiff a new valuation was made without the intervention of the heirs of the defendant; that this new valuation was 20,320 provincial *pesos* and was taken as a basis for the sale; that at the auction the mortgaged properties were sold in bulk. *Ninth.* That the vendee did not pay the full amount of his bid of 13,219.20 provincial *pesos* into the court in money but only the sum of $1,189.20, there being accepted as offsets against the purchase price a private document of deposit in his favor for 4,210.80 provincial *pesos* signed by Francisco Oliver, the sum of 4,000 provincial *pesos* secured by a first mortgage on some of the property and 219.20 provincial *pesos* as interest on the said mortgage. *Tenth.* That subsequently by a public deed of May 16, 1903, defendant Francisco Oliver Ballester bought from José González all of the mortgaged properties bid in by the latter at the sale, as described in the second count, and recorded his purchase titles in the registry of property, they being so recorded now in the name of said Francisco Oliver Ballester. *Eleventh.* That the said administrative foreclosure proceedings were begun, prosecuted and concluded while the court had no jurisdiction of the subject-matter thereof and in violation of General Orders No. 18 of February 12, 1899, No. 10 of January 19, 1900, and No. 92 of April 28, 1900, providing for the suspension of the operation of the Mortgage Law with reference to the recovery of debts against farming properties of all kinds and machinery from January 19, 1899, to January 19, 1901. *Twelfth.* That the defendant is in possession of the properties described in the second count, the value of which is $80,000, and has held the same unlawfully and received the products, rents and profits thereof from the time of the auction sale to this date to the prejudice of the interests of the plaintiff, the said products, rents and profits amounting to more than $20,000. *Thirteenth.* That Antonio Oliver Fontanet died on September 1, 1899, in Adjuntas, Porto Rico, a fact which the plaintiff knew when he instituted the summary foreclosure proceedings, leaving a will in which he designated as his sole and universal heirs his sister Isabel María and his brother Pedro Oliver y Fontanet who accepted the inheritance. *Fourteenth.* That Isabel María Oliver y Fontanet died on December 7, 1903, and her children Antonio, Bárbara and Jorge Alcover y Oliver succeeded her as her sole and universal intestate heirs and accepted the inheritance. On the merits of the foregoing the plaintiffs pray: *First.* That the court adjudge that the public auction in the case and consequently the judicial sale

made to José González were ineffective to transfer to the vendee the title of ownership to the mortgaged properties because the court had no jurisdiction over the person of the defendant. *Second.* That as a consequence the court likewise adjudge that the sale of said properties by José González to the defendant in this action was insufficient to transfer the ownership of the same to his vendee. *Third.* That the court decree that the title of ownership to the said properties remained in the heirs of Antonio Oliver Fontanet notwithstanding the orders of the court without jurisdiction and that the defendant make restitution thereof to the plaintiffs together with the products, rents and profits in the sum of not less than $20,000. *Fourth.* That the court order the cancellation in the registry of the records made by the judicial sale to José González and of the sale by him to the defendant. *Fifth.* That if the foregoing prayers cannot be granted the defendant be adjudged to pay to the plaintiffs the sum of $100,000 as an indemnity for damages for the violation of the contract.''

The assignment of errors specifies, first, that the court erred in not holding that the complaint stated a cause of action and, therefore, in not overruling defendant's general demurrer; and, second, that the court erred in holding the action barred by limitation.

Appellant states six distinct propositions under his first and four under his second specification, as follows:

"FIRST ERROR.

"I. The action for nullity of the foreclosure proceedings lies, without prejudice to that which the plaintiff may bring to recover the property sold under such proceedings without previously and specially asking that the nullity of such proceedings be decreed.

"II. The District Court of Ponce was without jurisdiction of the foreclosure proceedings that resulted in the sale of the mortgaged property at the time when such proceedings were had.

"III. The District Court of Ponce did not acquire jurisdiction over the person of the defendant.

"IV. The lack of jurisdiction of the court rendered the whole proceeding void *ab initio* and a judicial sale decreed by a court without jurisdiction passes no title to the purchaser.

"V. The irregularities of procedure other than jurisdictional, alleged in the complaint, also render the proceeding and the sale

void, at least as to those who cannot claim the character of third persons.

"VI. The alleged irrevocability of judicial sales does not exist, but even otherwise, a statute declaring judicial sales void for want of jurisdiction to be irrevocable, that is, immune to attack (a statute that does not exist), would be unconstitutional and void.

### "SECOND ERROR.

"I. When the nullity does not give rise to the action it is unnecessary to pray for a judgment in this regard.

"II. In the present case the nullity does not give rise to the action because the acts of a court without jurisdiction have no legal existence.

"III. The action for the nullity of contracts is barred within four years, but in the case at bar the nullity of a contract is not involved, but rather, its inefficacy with respect to one not a party thereto.

"IV. A statute creating a four-year limitation upon the annulment of a judicial sale decreed by a court without jurisdiction would be void."

Appellee presents his argument in support of the two demurrers under the following subheads:

### "FIRST GROUND OF DEMURRER.

"That the complaint does not state facts sufficient to constitute a cause of action:

"(a) Vices or defects of procedure that may constitute lack of jurisdiction over the person of the defendant.

"(b) Vices or defects of procedure that may constitute want of jurisdiction over the subject-matter.

"(c) Mere irregularities of procedure.

"(d) Mere irregularities or defects of procedure cannot affect a purchaser at a judicial sale.

### "SECOND GROUND OF DEMURRER.

"That the complaint does not state facts sufficient to constitute a cause of action, in that it appears from the face thereof that the action for the nullity of contracts therein set forth is barred by limitation:

"(a) That a judicial sale is a contract.

"·(*b*) That the action for the nullity of contracts, set up by the complaint, is barred by limitation.

"(*c*) That in this litigation plaintiffs must first and necessarily demand the nullity (*nulidad*) of the title of defendant, that is, of the contract made by him with José González; ·and the nullity (*nulidad*) of the .judicial sale.

"(*d*) That plaintiffs would have the right, and an action would lie, to demand such nullity (*nulidad*), notwithstanding not having been parties to such contracts, if such action were not barred."

A full discussion and final decision of all the questions thus raised, however interesting an extended consideration thereof might be, would consume more time than can just now be legitimately devoted to this case and would prolong this opinion to inordinate length. The better practice under ordinary circumstances is to give the district courts full opportunity to pass, in the first instance, upon all questions involved. No reason has been suggested why an exception to the general rule should be made in this case. The court below decided but one of the two fundamental questions submitted to its consideration. In holding that the complaint was insusceptible of such amendment as would avoid the result of this decision, however, the trial judge incidentally ruled upon the necessity of a prayer for annulment as an indispensable prerequisite to a successful prosecution of the reivindicatory action. All other matters argued upon appeal will be considered only in so far as may be necessary or properly incident to a determination of the points thus placed in issue.

Had plaintiffs' theory of the absolute nullity of the mortgage foreclosure been based exclusively upon the alleged violation of the Military Order mentioned in the complaint, we might then, in view of the possibility of a final disposition of the case, have felt constrained to consider upon its merits the somewhat doubtful question as to whether the reasoning of the Supreme Court of the United States in *Ochoa* v. *Hernández*, 230 U. S. 139, should control the case at bar; but,

regardless of whatever conclusion we might reach in this regard, the case must be remanded for further proceedings under the view we take of the question actually decided by the district court, and a determination at this time of the validity of such General Order would serve no useful purpose. Moreover, while it can hardly be denied that much of what is said in the course of the opinion in the Ochoa case seems at first blush more or less applicable by analogy to the General Order involved herein, yet, upon the other hand, there are many points of dissimilarity suggestive of important distinctions to be drawn and of serious considerations not as yet touched upon by either of the parties to this suit, and the doctrine of that case is not lightly to be extended to govern the question now at issue. We deem it best, therefore, under all the circumstances to leave this question open for the present.

For the purposes of this opinion we may admit appellee's first proposition that "a judicial sale is a contract."

The Civil Code provides:

"Sec. 1221.—A contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service.

"Sec. 1224.—Contracts shall only be valid between the parties who execute them and their heirs    *    *    *.

"Sec. 1226.—No one can contract in the name of another without being authorized by him or without having his legal representation according to law.

"Sec. 1228.—There *is no contract* unless the following requisites exist:

"1. The consent of the contracting parties.

  *      *      *      *      *      *      *

"3. The cause (consideration) for the obligation which may be established.

"Sec. 1232.—Consent given by error under violence, by intimidation, or deceit, shall be void.

"Sec. 1242.—Contracts without consideration or with an illicit one have no effect whatsoever. A consideration is illicit when it is contrary to law and good morals.

"Sec. 1243.—The statement of a false consideration in contracts shall render them void, unless it be proven that they were based on another real and licit one.

"Sec. 1257.—Contracts *validly executed* may be rescinded in the cases established by law.

"Sec. 1266.—The action asking rescission must be brought within four years  *   *   *.

"Sec. 1267.—Contracts *containing the requisites mentioned* in section 1228 may be *annulled*, even when there should be no 'lesion' to the contracting parties, whenever they contain any of the *defects which invalidate* them according to law.

"Sec. 1268.—The *action for nullity* shall last four years.

"This term shall commence to run:

"In cases of intimidation or violence, from the day on which it has ceased;

"In those of error or deceit or *falsity* of consideration, from the date of the consummation of the contract;

"When the purpose of the action is to invalidate contracts made by a married woman, without consent or competent authority, from the date of the dissolution of the marriage;

"And when it refers to contracts executed by minors or incapacitated persons, from the date they were released from guardianship.

"Sec. 1276.—The action of nullity is extinguished from the moment the contract may have been validly *confirmed*.

"Sec. 1280.—*Confirmation* purges the contract of *all defects* which it may have contained from the moment of its execution."

Plainly the four-year limitation placed upon actions for nullity applies only to contracts "containing the requisites mentioned in section 1228." Treating the judicial sale as a contract in which the court or its duly authorized official representative is substituted for the real vendor whose "consent" is by a paradoxical legal fiction given by the court, yet the court must have jurisdiction at least over the subject-matter and usually over the person of the defendant. Courts are creatures of the law and the power to hear and determine the subject-matter in controversy is the ordinary definition and, indeed, the very essence of jurisdiction. And if the law requires personal or constructive service of a summons upon a defendant as an indispensable prerequisite to

the exercise of such jurisdiction, then the court, without such previous service, is as wholly without power to give such consent as any unauthorized private individual. The "consent of the contracting parties," required by section 1228, is in either event entirely absent, and in the simple language of that section "there is no contract." There is nothing to be "annulled," within the meaning of section 1267, nothing upon which to base "the action for nullity" referred to in section 1268. It follows that the bar in question is no defense to an action for the reivindication of real estate so sold.

The fundamental principle underlying the well-known distinction between void and voidable contracts pervades throughout the very luminous discussion by Manresa of articles 1257, 1259, 1261, 1263, 1264, 1265, 1275, 1276, 1299, 1300 and 1301 of the Spanish Code, corresponding to the sections above quoted from our own if we add thereto sections 1230 and 1231, quotation of which as well as of other more or less correlated provisions we have omitted in the interest of brevity. It will suffice to refer likewise, without quotation or discussion, to volume 8 of the Commentaries (ed. of 1907) pp. 613, *et seq.,* 623, 628, 639, 644, 681, 683, 762, 766, 771, 774 and 777.

As to the cases cited by appellee in support of his proposition that the action is barred, we find:

In *Vázquez* v. *Vázquez,* 15 P. R. R. 84, the *heirs* of a *vendor* after his death sought the annulment of a deed, valid upon its face, *executed by such vendor in person,* upon the ground that the instrument was *simulated* or *false,* that there was no real sale and that the purchaser, in fact, held the property *in trust* for the benefit of the *vendor and his heirs.* Appellants urged "a distinction between a contract validly made and one which is simulated and the party against whom the relief is sought is a mere trustee." Upon what theory it was attempted to establish the alleged distinction does not appear. Whatever it was, it does not seem to have found

favor with the court.   We need not dwell upon the wide difference between a total absence of any consideration and a simulated consideration so strongly emphasized by Manresa in the text just cited.   There is nothing to show that the question of whether the deed was absolutely void or merely voidable was in anywise involved in the Vázquez case.   Certainly it does not appear to have been in the mind of the court.   There is not the remotest suggestion of any element of a suit in ejectment or of any other action as contradistinguished from one "for nullity" pure and simple.

In *Agostini* v. *Philippi et al.,* 16 P. R. R. 630, this court said:

"The *action* brought was *for the annulment of a contract* of assignment of rights and actions entered into by public deed, dated October 18, 1898, *by the plaintiff* and one of the defendants, and the *grounds* alleged for the annulment were that the defendants *obtained the consent* of the plaintiff *by means of deceit,* and that the *consideration set forth* in the contract *was false.*

"So then, the *nonexistence of a contract is not the question involved but the nullity thereof*—that is to say, *there has not been an absolute absence of the essential elements of the contract—but the defective existence of those necessary elements,* and *the case comes within the clear provisions of section 1268* of the Revised Civil Code.

    \*      \*      \*      \*      \*      \*      \*

"The *action for annulment* is the *fundamental question* here. The plaintiff did not prosecute this action before the court until after the expiration of more than 10 years from the date on which the contract was executed—that is to say, after the contract according to the law had become valid and could not serve as a basis for a claim contrary to its provisions—which, in view of the fact that it had become valid, must be considered as true and certain. (See *Vázquez* v. *Vázquez,* 15 P. R. R. 84.)"   (Italics ours.)

In *Estate of Lampón* v. *Estate of Rivera,* 16 P. R. R. 321, another case of alleged fictitious sale, the case is clearly distinguished by the following statements:

"At the trial there was no evidence of the *simulation of the contract* of purchase and sale involved in the deed of July 11, 1873,

but even had *such simulation* existed, the action would have pre-scribed, for which reason it is unnecessary to discuss whether or not the *heirs of Ramón Lampón* could attack the validity of said deed, thereby *repudiating the acts of their father.*" (Italics ours.)

In *Estate of Jiménez* v. *Ahumada et al.,* 14 P. R. R. 283, the syllabus reads as follows:

"Where an action is brought for the *annulment* and *rescission* of a contract based on *error, fraud* and *a false consideration* without alleging any facts which show the interruption of prescription, a general demurrer on the ground that the complaint does not state facts sufficient to constitute a cause of action will be sustained, where prescription has run more than four years after the consummation of the contract." (Italics ours.)

And, finally, in *Diez & Arrarás* v. *Bascos et al.,* 5 P. R. R. 199, the only language of this court bearing upon appellant's proposition is the following:

"The *error* and *deceit alleged* in her favor by Narcisa Bascos, which should never be presumed, have not been proven, and even supposing the contrary to be the case, there would still be the fact that the right of action for nullity had prescribed by the lapse of the legal period allowed for the successful prosecution of said action."

Thus all of the cases relied upon by appellee fall clearly within those enumerated in the third group expressly speci-fied by section 1268 in fixing the date from which the period prescribed shall begin to run. The argument of appellee takes as its starting point the statement of Manresa that "the *supposititious or false contract,* in so far as it is and is shown to be such, (thus) destroying the *semblance* thereof, *is the clearest case of non-existence, so much so that the usual and the juridical sense of this word therein become identical.*" Then wholly ignoring the clear distinction drawn by Man-resa between *simulated* or *fictitious* and what he calls *"sup-posititious or false"* contracts, and in an utter confusion of terms the argument proceeds upon the theory that *"a simu-lated* contract is the *typical case* of a *non-existing contract."*

And by way of preface to this argument upon the question of prescription appellee says:

"Should it be necessary in discussing this question to consider the distinction drawn by the commentators on the Civil Code between void contracts and those regarded as non-existent, the discussion would be endless. We feel ourselves justified in not entering into a discussion of this point, for whether the contract sought to be annulled be a void contract or a non-existent one, it falls within the provisions of section 1268 of the Civil Code, which allows only a period of four years in which to bring an action for its annulment. That is the opinion of Scaevola * * *."

The matter is so elementary that no further argument seems necessary to show that the cases cited,—in none of which is there any serious doubt as to the primary purpose of avoiding a contract valid on its face, and in each of which the suit was brought, not by a third person alleging the absolute nullity of the instrument assailed, but either by the parties to a contract, voidable at most, or their heirs,—do not sustain the proposition urged by appellee as his second ground of demurrer.

The exact question under consideration was squarely decided by this court in the recent case of *Succession of Suro* v. *Succession of Prado,* 21 P. R. R. 227. We need not repeat here what was said in that case. It is in full harmony with the distinctions drawn and the elementary principles laid down by the Civil Code and by its ablest and most modern expositor in the pages already cited, and with the general trend of previous decisions of this court and of the Supreme Court of Spain. It is indistinguishable in principle from the case at bar and is conclusive upon the point primarily at issue herein.

We might leave the matter here had not the court below also held incidentally in its opinion that it is "indispensable in the present case to demand the annulment of defendant's title, as plaintiffs did in their original complaint and as they were necessarily obliged to do in order that the reivindicatory

action might prosper"; * * * that "plaintiffs in their amended complaint in reality instituted a suit for annulment"; * * * and that "the facts alleged in the complaint clearly show that the reivindicatory action instituted is derived from and is the consequence of the nullity of the contract mentioned, it being immaterial that the annulment of the latter is not prayed."

Under these circumstances silence upon our part as to the question stated in appellee's third proposition (*c*) under the second ground of demurrer—a question of considerable importance—might be interpreted as a tacit concurrence in the conclusion reached by the court below and thus mislead the parties to their prejudice. We shall therefore notice briefly the written argument of appellee in this regard. It follows:

"(*c*) That in this case plaintiffs must necessarily pray for the annulment of the title of the defendant, to wit, the contract entered into by him with José González, and for the annulment of the judicial sale.

"The doctrine applicable to cases in which it is necessary to bring an action for the annulment of the defendant's title first in order that the action of ejectment may prosper, is clearly laid down in a case decided by the Supreme Court of Spain wherein it said:

"'An action of ejectment cannot prosper against the possessor of a thing which he holds under some title unless it is preceded by another adequate action to annul said title in cases in which the *right of the complainant is derived from the nullity of the defendant's title,* but that doctrine is not applicable when the respective rights of both parties are derived from instruments and different facts *without relation or connection between those set up by the complainant and those adduced by the defendant,* the action being thus reduced to a discussion of the value, efficacy and preference of the instruments or data upon which the parties base their respective claims. 70 *Juris. Civ.* 596; 65 *Juris. Civ.* 528.

"Let us apply the foregoing doctrine to the case at bar and ascertain whether it is necessary for the defendants to pray for first, as they have done in the complaint, the nullity of the defendant's title in order that the action brought by them may prosper.

"The title which the plaintiffs have is that of heirs of Antonio
Oliver Fontanét, *the debtor* in the foreclosure proceeding wherein
the properties claimed were sold. The plaintiffs allege in their com-
plaint that the proceedings in the said suit are *null* and *void* and
that *in consequence of such nullity* the judicial sale made to José
González, who could not acquire any title to the properties sold at
auction nor transfer the same to defendant Francisco Oliver, is like-
wise void, the title asserted by said Oliver to the said properties
being also *void.* Therefore the plaintiffs *base their action* to recover
upon *the supposed nullity of the title* of defendant Oliver, and in
this case it is indispensable to seek the annulment of the title pre-
viously. It cannot be doubted or questioned for a moment that in
this case *the nullity is that which creates the right of action, which*
we shall demonstrate by the following proposition: *If the plaintiffs
admit that the foreclosure proceedings are valid and, consequently,
that the judicial sale to José González is valid, and the contract of
sale entered into by the latter with defendant Oliver is likewise valid,
would they be entitled to recover the mortgaged properties claimed
by them in their complaint?* No. Therefore, it is an indisputable
consequence that in this case the *nullity is what creates the action;*
that is, the *alleged nullity.*

"Moreover, it is required by the doctrine that such nullity must
be prayed for previously, provided that both parties *derive their
respective rights from instruments and facts which are not distinct
but are related and dependent one upon the other.* Let us see whether
these conditions exist in the case at bar: The title of the plaintiffs is
that of their predecessor in interest, that is the debtor, Antonio Oliver
Fontanet, for the very title which José González acquired by the
judicial sale is derived from Antonio Oliver Fontanet himself who
was the debtor in the foreclosure proceeding and in turn the title
of defendant Francisco Oliver y Ballester is derived from that of
José González; therefore there is in this case a perfect *dependency
and relation between the title of the plaintiffs* (which is the same as
that of their predecessor in interest, the debtor) and between the title
of José González and that of defendant Francisco Oliver. Then
it is necessary to apply the doctrine and to hold that the plaintiffs
were obliged to pray for, *as they have in their complaint,* the nullity
of the defendant's title.

"Actions which are based on the nullity of an act or obligation,
or of a public and solemn instrument, cannot prosper without first
praying for or obtaining a decree of said nullity in accordance with

the jurisprudence and doctrine accepted by the courts and repeatedly laid down by the Supreme Court.' 16 *Juris. Civ.* 389; 11 *Juris. Civ.* 558.

"But this court has decided two cases which perfectly illustrate the question as to when it is necessary to set up the nullity of the title of the defendant and when it is unnecessary to do so, in which cases the same doctrine is laid down, viz: that whenever the titles of the complainant and defendant *arise from the same source it is necessary* first *to establish the nullity,* but *if they spring from distinct sources it is unnecessary to do so.*

"In the case of *Succession of Nieves* v. *Succession of Sánchez,* 17 P. R. R. 837, complainants claimed a joint interest in two properties as heirs of their mother, alleging that after her death the widower, father of the plaintiffs, had sold said two properties to the father of the defendant as if they belonged to him exclusively, when the said properties belonged to the conjugal partnership and, therefore, the mother of the plaintiffs was the owner of half of said properties. This court held that in that case the complainants did not have to pray for the nullity of defendants' title *because the action of ejectment was independent of said nullity,* citing four judgments of the Supreme Court of Spain wherein the doctrine is laid down that in a case in which the nullity does not create the action it is unnecessary to establish it previously. It is very clear that in that case the nullity did not create the action since the complainants based their right *upon the title held by their mother as a member of the conjugal partnership, which title never was transferred by her to any person in any manner;* that is to say, *neither with nor without defects of nullity.* It was not alleged in the complaint filed in this case that defendants' title was null and void, nor was any *fact shown to determine said nullity,* but it was alleged that the father of the plaintiffs was not the exclusive owner of said properties inasmuch as one-half belonged to the mother of the plaintiffs and by reason of her death, to her heirs, the complainants. The case cannot be more simple and clear: If the complainants did not base their claim upon any ground which might cause the nullity of the defendant's title, why should they ask for a declaration of said nullity? The title of the defendants did not arise in that case *from the same source* as that of the *complainants since the latter derived their right of action from their mother's title* while the defendants derived their right *from a different person, the father of the complainants;* therefore no *relation or dependency existed between the titles* themselves, for which reason

it had to be held as the Supreme Court did, *that it was not necessary to plead first the nullity of the defendant's title. Succession of Nieves* v. *Succession of Sánchez,* 17 P. R. R. 837.

"Let us consider the other case wherein the Supreme Court held that it was indispensable to have established previously the nullity of the title of the defendant and that as this was not done the complaint had to be dismissed.

"In the case to which we shall refer it was alleged by the complainants that an irrigation concession and a tract of land sought to be recovered by them was not legally included in a deed of sale executed by the predecessor in interest of the complainants in favor of the defendants to a part of the plantation 'Adela' and the Supreme Court said:

" 'But on reading the complaint and especially the allegations numbered 24 and 25, it appears that the action for recovery herein prosecuted is based on the supposition that the title of Ciprian Blondet, the predecessor in interest of the plaintiffs, *was not legally conveyed to the defendant possessors.*

" 'So that the real contention is that the conveyance of the irrigation plant and the tract of land to the defendants *is null and void. Nullity then is produced by an action* (the nullity, then, is what creates the action) and it appears therefore that the right to recovery *is not independent* of the right of annulment *so that it was necessary first to seek the annulment of the title of the defendants,* as it is only by this means that the title of plaintiffs could be strengthened, because otherwise both titles cannot subsist and be harmonized. (Judgments of the Supreme Court of Spain of June 27, 1867; October 16, 1873, and May 22, 1889.)

" 'Neither in the prayer of the complaint nor in any part thereof is the annulment of defendant's title demanded nor the annulment of the record thereof in the registry of property.

" 'The judgment appealed from must be affirmed with the costs of the appeal against the appellant.' *Estate of Blondet et al* v. *Fantauzzi Hermanos,* 14 P. R. R. 302.

"The facts of that case are exactly the same as those of the case at bar. In the latter as in the former, complainants allege that the title of their predecessor in interest, the debtor, was not legally and properly transferred by the court, acting on behalf of the debtor, to the judicial purchaser, José González, and therefore the latter could not transfer the same legally and properly to the defendant Francisco Oliver; so that in this case as in that of *Blondet* v. *Fan-*

*tauzzi,* what is really held is (using the very words of this court) that the conveyance of the mortgaged properties to the defendant Oliver *is null and void.        The nullity, then, is what creates the action and it appears therefore that the right to recovery is not independent of the right of annulment* so that it was necessary first to seek the annulment of the title of the defendants· (as the plaintiffs have done), *as it is only by these means that the title of plaintiffs could be strengthened, because otherwise both titles cannot subsist and be harmonized.*

"But the adverse party himself recognizes the soundness of the doctrine relied on by this party and presents it in the same way as we do. 'The real *test* (he says on page 43 of his brief) of whether it is necessary to ask for the nullity lies in the answer to the question, does the nullity produce or not the action of ejectment? *If it does not create it, if the action is independent of the nullity, recovery may be had without previously asking for the nullity.'* Then, eliminating from the complaint under consideration the facts regarding the supposed defects of nullity of the proceeding, what would remain? The fact of the *appearance* of complainant, *the products produced by the property* and the *prayer.* Are these facts sufficient for recovery? Clearly not. Therefore *the facts determining the nullity of the titles of the defendant* are those which solely and exclusively constitute the cause of action, that is, *they create it.* Was it the same in the case of *Nieves v. Sánchez* which the adverse party considers similar to the case at bar? By no means. In said case the complainants only had to allege the title of their mother to the properties sought to be recovered, it being unnecessary for them to make any reference whatever to the defendants' title *which was distinct from theirs* and had no *relation or dependency therewith of any kind.* If the defendants had alleged their title in the answer and the court thought that the action of ejectment by the plaintiff was proper, that is, that their mother never transferred her title to any person *either legally or illegally* and no court did so in her name, then, as a necessary consequence of the action brought, the court should decree the nullity of the defendants' title and the same would occur if the attorney for the opposite party should sell the White House to the attorneys for this party, as recited in the proposition contained in their brief. Not only *four* years, but one *hundred* years might go by and the *prescription of the action of nullity* could *never* be invoked, for the mere reason that it never would have to be brought. Its real owner could always rely on his title not trans-

ferred to anyone, *nor transferred* in his name by any court, and he would not have anything to do with that conferred upon us by Mr. Tous Soto.

"We do not understand what application the cases cited by the opposite party at page 45 of his brief have to this case. This case is governed by our Mortgage Law, *which grants the action for nullity of proceedings against the mortgage creditor.* We repeat that the law *does not authorize the action against the purchaser at the auction sale,* nor the attachment of the property bid in, *but the retention of the proceeds of the sale to secure* the effectiveness of the judgment which might be rendered against the creditor and this is conclusive evidence that the purchaser acquires the property free from encum-. brances. And we repeat, furthermore, that in the foreclosure proceeding there was no lack of jurisdiction and therefore that we cannot apply to the case at bar the jurisprudence cited by the adverse party, which is all based upon judgments rendered without jurisdiction and construed statutes which are entirely different from those in force when said foreclosure proceeding was brought.

"The judgment of October 27, 1882 (50 *Juris. Civ.* 236), cited by the appellant at page 49 of his brief, is entirely in accord with our contention, since the complainants based their action of ejectment upon the soundness of their own titles and not upon the vices or defects which the title of the defendant might contain, they being *distinct* from that of complainants. See the judgment of May 9, 1862 (*Juris. Civil,* 322), which is a case similar to the case at bar. There a property was judiciallly adjudicated, reserving to the complainant the right which he might have to the same; the grantee sold the said property to the defendant and the Supreme Court of Spain held that inasmuch as the action had not been brought within *the four years* allowed by law, the same had prescribed."

Both extracts from the two decisions first quoted by appellee expressly limit the application of the statute of limitation to cases in which "plaintiff's right of action springs from the nullity of defendant's title," and one emphatically affirms that cases in which plaintiff and defendant do not derive title from a common source constitute an exception to the rule. And here again we find the fundamental vice of a broad hiatus in the premise, growing out of a confusion of terms and, in addition thereto, a plain *non sequitur* between

premise and conclusion. To assume that the *debtor* in the mortgage foreclosure proceeding is the actual *vendor* in the judicial sale simply begs the vital question at issue. Nor do the question propounded and the answer given thereto by appellee support the conclusion sought to be drawn therefrom. The proposition may be generalized thus: "If the plaintiff in any ejectment suit should admit at the outset the superiority of defendant's title, could he then recover? No. *Therefore,* his right to recover must depend upon the weakness of his adversary's title and not upon the strength of his own,"—a conclusion subversive of the most fundamental rule in actions for the recovery of real estate in both common and civil law jurisdictions and a manifest *reductio ad absurdum.*

Suppose in the case at bar plaintiffs had, as to titles involved, merely alleged that they are the owners of the properties in question, setting up their chain of title, and that defendant was wrongfully and illegally withholding the possession thereof; surely defendant would not contend that such a complaint fails to state a cause of action in that it does not set forth defendant's title in anticipation of what the defense may be. Suppose further that defendant should answer, setting up his title with such fullness of detail that the alleged jurisdictional defects would appear upon the face of the answer, and plaintiffs should demur upon the ground that the facts so stated in the answer do not constitute a defense in that upon the face of such answer the mortgage foreclosure proceedings and the sale thereunder were absolutely null and void for want of jurisdiction in the premises. Clearly we would then be confronted with the identical questions involved herein and could hardly hold such a suit to be, in fact, a personal action for the annulment of such proceedings and of defendant's title thereunder, brought in the guise of a suit in reivindication, and the mere fact that plaintiffs choose to anticipate the defense by setting forth the title upon which they understand defendant relies and averring facts which, they contend, show that such title is absolutely

null and void, does not necessarily change the character of the action. Nor, assuming for the sake of argument the soundness of plaintiffs' contention as to the jurisdictional nature of the facts alleged, do we see why, in the event of a trial upon the merits of the issue as made in the hypothetical case just stated and upon the proof of a *prima facie* title in fee simple in plaintiffs and of a title absolutely void on its face as the only defense, the court could not render judgment for the recovery of the lands in question upon the ground that plaintiffs' *prima facie* title was unaffected by any of the proceedings or deeds constituting defendant's chain, without expressly annulling or setting aside any of the latter. Indeed, appellees substantially admit as much in argument and, in fact, the parties practically agree upon the law in the abstract and differ only as to the application that should be made thereof in this case.

The distinction is well illustrated by the citation and discussion by both parties of the Nieves case, among others, and here, also, the conclusion is irresistible that appellants have the best of the argument. We quote from their brief as follows:

"The real *test* of whether it is necessary or not to pray for the nullity is whether or not the nullity creates the action of ejectment. If it does not; if the action is independent of the nullity, the action of ejectment may be brought without previously seeking the nullity. Such is our case. It is exactly the same as the case of *Nieves* v. *Succession of Sánchez,* 17 P. R. R. 837. Cleto Estrella sold the property of his son which he had no right to sell. The court sold the property of Oliver Fontanet which it had no right to sell. The children of Cleto Estrella, who were not bound by the sale made by their father, could bring the action of ejectment without praying for the nullity (although they did so). Oliver Fontanet (or his heirs) may recover their property which the court sold inasmuch as they were not bound or deprived of any right by this deed. Whether the unauthorized sale was recorded or not is a question which has nothing to do with the question as to whether the nullity of the sale should be sought. The sale is one thing and the recording another.

"The case of *Nieves* v. *Succession of Sánchez,* 17 P. R. R. 837, plainly settles the question.   After the death of his wife Cleto Estrella sold certain ganancial real property without liquidating the estate left by his wife.   The heirs brought an action of ejectment against the purchaser and possessor.   The latter pleaded lack of cause of action on the ground that the action for nullity of the contract of sale between Cleto Estrella and Benito Sánchez, the predecessor in interest of the defendants, had prescribed according to section 1268 of the Civil Code.

"The nullity of the said contract was expressly prayed for in the complaint.

"In deciding that case the court said:

" 'After studying the case carefully we cannot agree to the grounds of the judgment appealed from.   The action instituted by the plaintiff is of ejectment and is independent of an action for annulment of the defendants' title.

" 'The legal doctrine that it is necessary first to request the annulment of title when an action of ejectment is instituted against persons who possess the object of the same by virtue of title had as lawful is only applicable when the annulment causes the action, but not when the right to recover is independent thereof.'   Judgment of the Supreme Court of Spain, October 16, 1873.

" 'The action of ejectment being founded on a right recognized as preexistent to that of the defendant's title, it is not necessary to ask, previously and separately, for the annulment of said title, because the plaintiff's action is not derived therefrom, but is a consequence of the one he has deduced.'   Judgment of the Supreme Court of Spain, January 17, 1889.

" 'The principle that an action of ejectment cannot be instituted against a possessor whose title, more or less good, is recorded in the registry of property without a preceding action which, in accordance with law, must be adequate to destroy the same, is unacceptable when the action instituted has no other object than to obtain the real property that the plaintiff claims as owner, although not on the ground that the defendant's title is more or less effective.'   Judgment of the Supreme Court of Spain, April 6, 1889.

" 'A person whose action of ejectment is founded on a title independent of the possessor's is not obliged to ask and obtain the annulment thereof in order that his action may prevail.'   Judgment of the Supreme Court of Spain, February 13, 1892.''

Appellants also cite the judgment of the Supreme Court of Spain rendered March 18, 1904, (Gazette of May 13); Scaevola *Jurisprudencia Cod. Civ. An.,* 1904, p. 177; and judgment of October 27, 1882, *Juris. Civ.,* vol. 50, p. 236. As likewise pointed out by appellants, the rule seems to be the same in Louisiana. See *Doncer* v. *Fenelon,* 120 La. 18; *Bledsoo* v. *Erwin,* 33 La. Ann. 615; *Heirs of Woods* v. *Nichols,* 33 La. Ann. 744; *Seland* v. *Gebellin,* 46 La. Ann. 326; *Heirs of John Hord* v. *Miela,* 46 La. Ann. 331; *Danervivo* v. *Opera House,* 46 La. Ann. 1316; *Mays* v. *Witkowski,* 46 La. Ann. 1473.

Both the general rule and the exception thereto are so well established and the distinction between one and the other is so clearly and universally drawn that further discussion would seem to be superfluous. The only real difference between the parties, as we have already suggested, arises rather upon the question of whether this case comes within the rule or within the exception. We think it plainly falls within the latter.

We do not maintain that the complaint states a cause of action. It may be that defendant's demurrer filed in this court is not without merit or that for various reasons other than the one specified by defendant and sustained by the district court, the complaint is insufficient. In any event these are, as we have already indicated, matters to be determined first by the trial court, giving plaintiffs ample opportunity to amend, if necessary, and in so far as amendment may be possible, before putting them to the expense, trouble and annoyance of another appeal. We simply hold that plaintiffs' action, whether purely reivindicatory or otherwise, is not barred by section 1268 of the Civil Code; that neither the setting up of defendant's chain of title nor a prayer for the annulment thereof is an indispensable requisite of the action, viewed as a suit in ejectment, and that the mere fact that plaintiffs choose thus to anticipate a possible defense and to allege the absolute nullity of defendant's title does

not necessarily divest the proceeding of its true character or convert it into an "action for nullity." We decide nothing beyond this.

The judgment must be reversed and the case remanded for further proceedings not inconsistent herewith.

*Reversed and remanded.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice Wolf concurred in the reversal.

### OPINION OF MR. JUSTICE WOLF.

I agree to a large part of the reasoning of the court in this case but it seems to me under such reasoning that the complaint did state a cause of action, although perhaps not very clearly, and that the cause of action was not barred. It sufficiently appears, I think, that the District Court of Ponce was without jurisdiction of the mortgage foreclosure proceedings. Hence I think the demurrer should have been overruled by this court and the case sent back for further proceedings.